# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SUSIE WEITZENKAMP,

       Plaintiff,

   v.                                         Case No. 09-C-1017

UNUM LIFE INSURANCE COMPANY,

       Defendant.

---

## DECISION AND ORDER

---

Plaintiff Susie Weitzenkamp was denied disability benefits under a policy issued by Defendant Unum Life Insurance Company as part of an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and now seeks review of that decision. Federal jurisdiction is conferred by 28 U.S.C. § 1331. Unum determined that the medical information in the file did not substantiate a physical condition severe enough to cause Weitzenkamp to be disabled under the terms of the policy. Unum also concluded that even if her condition was sufficiently severe to render her disabled, she had already received benefits for more than twenty-four months and the policy's "self-reported symptoms" and "mental illness" limitation precluded further payment. Weitzenkamp claims that Unum's decision was arbitrary and capricious, and Unum filed a counterclaim seeking return of its claimed overpayment.

Both sides have filed motions for summary judgment, as the case presents the sole question of whether Unum acted arbitrarily and capriciously in denying Weitzenkamp disability benefits. For the reasons given below, I conclude that Unum's determination that Weitzenkamp was not

disabled under the terms of the Unum policy was arbitrary and capricious. However, I further conclude that Unum was entitled to apply its policy's limitation on benefits for disabilities based on self-reported symptoms. Accordingly, Unum's motion for summary judgment will be granted and Weitzenkamp's denied.

## I. Background

Weitzenkamp was employed by Time Warner as a sales representative. In December 2005 she began experiencing increased symptoms of pain and fatigue, and she applied for short-term disability benefits, which Unum granted. In September 2007 Plaintiff was awarded Social Security Disability benefits retroactive to December 2005 upon a diagnosis of affective disorder and a secondary diagnosis of muscle and ligament disorders due to fibromyalgia. (R. at UA-CL-003185.) Unum initially approved Plaintiff's claim for long-term disability benefits, but it discontinued payment of benefits on August 22, 2008 after its medical staff received and reviewed Plaintiff's medical files and obtained the opinions of several consulting medical providers.

First, Unum retained a medical consultant, F. William Black, Ph.D., a neuropsychologist, who reviewed Plaintiff's medical records. In particular, Black reviewed the testing done by Plaintiff's neuropsychologist, Dr. Neunaber. Black concluded, in a detailed analysis, that Neunaber's findings about Plaintiff's cognitive impairments were both overstated and unsupported. He noted that the neuropsychological exam conducted by Neunaber omitted a number of key tests, and the evidence of Plaintiff's cognitive functioning was not as negative as Neunaber found. For example, Black found that Neunaber rated Plaintiff's test scores as "moderately impaired" when in reality Plaintiff had scored at the "low average-borderline" range. (R. at UA-CL-00 3211.) As

2

such, Black concluded that the medical records did not support the conclusion that Plaintiff suffered from any cognitive disorder. In a follow-up conversation with Black, Neunaber indicated that Plaintiff was unable to work due to the combination of physical pain and emotional stress and their effect on her cognitive functioning.

Unum also consulted with a physician, Daniel Krell, M.D., who reviewed Plaintiff's records and focused on the fact that Plaintiff's claim was based on self-reported symptoms and impairments rather than any documented physical findings. (R. at UA-CL003263.) Although Weitzenkamp self-reported these limitations and cognitive impairments, such as memory loss and disorientation, none of her medical providers had actually observed functional limitations from these symptoms. Krell referred the case to Unum's medical director, Gary Greenhood, M.D. Dr. Greenhood concluded that, although Plaintiff was impaired by pain, her pain was a self-reported symptom of fibromyalgia that was "not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine." (R. at UA-CL-00 3288.) Because the Unum policy contained a 24-month limitation for disabilities based on self-reported symptoms, Greenhood recommended that benefits be ended because Plaintiff had already received benefit payments for more than 24 months.

Through counsel, Plaintiff appealed the determination. In response, another Unum consultant, Jana Zimmerman, Ph.D., reviewed the medical file. In considering Dr. Neunaber's test data, Zimmerman also concluded that the data was lacking and "did not support a diagnostic impression of cognitive disorder and/or impaired performances." (R. at UA-CL-003442.) Some important tests were conducted in abbreviated form, she concluded, and most of the results did not support a diagnosis of cognitive disorder. Dr. Zimmerman found instead that Plaintiff's mental health issues, including depression and anxiety, as well as lack of sleep, contributed to her cognitive

3

impairments. Unum also consulted with Norman Bress, M.D., a rheumatologist. Bress considered Plaintiff's fibromyalgia but noted that most individuals with fibromyalgia are able to work and there was nothing unusual about Plaintiff's case to indicate she could not also work. In addition, Plaintiff had experienced her symptoms for a long time prior to claiming disability and there was no evidence of a "flare" or dramatic increase in symptoms at the time she stopped working. She had experienced her symptoms for years but "she was able to work full time." As such, "the claimed restrictions and limitations are not supported on the basis of symptoms associated with the insured's FM (fibromyalgia)." (R. at UA-CL-00 3533.) Based on this additional review, Unum affirmed its decision ceasing benefits.

## II. Analysis

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is particularly appropriate when the Court is asked to review an administrative record, as here.

Both sides agree that the insurance policy issued by Unum grants discretion to Unum to construe terms of the policy and to determine eligibility for benefits. When an administrator of an ERISA plan has discretion to determine eligibility, its decisions are not subject to *de novo* review in federal court. Instead, courts review such determinations under the arbitrary and capricious standard, which means the plan administrator's decision is entitled to "great deference." *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan,* 378 F.3d 669, 677 (7th Cir. 2004). Under that standard, I cannot overturn the decision merely because I disagree with Unum's conclusion; instead, the Plaintiff must demonstrate that the decision is "downright unreasonable." *Id.*

**A. Objective Evidence that Plaintiff was Disabled**

Central to Plaintiff's case is her belief that Unum wanted to have it both ways. Its decisions

denying benefits suggested that it wanted more objective evidence of her pain, but there *are* no

medical tests or other objective means to prove the existence of self-reported symptoms like pain.

It was thus arbitrary and capricious for Unum to cite the lack of evidence of pain as a reason for

denial of benefits when no such evidence could ever be produced, and in its denial letters Unum

never identified what type of additional objective evidence of pain would be satisfactory. *See, e.g.,*

*Williams v. Aetna Life Ins. Co.,* 509 F.3d 317, 322 (7th Cir. 2007) ("Williams argues that because

fatigue is inherently subjective, Aetna acted improperly when it denied Williams's claim on the

basis of a lack of objective support in the record.")

In *Hawkins v. First Union Corp. Long-Term Disability Plan,* the Seventh Circuit found error

when the plan administrator denied benefits based on its medical consultant's view that a claimant

could never be found to be disabled due to fibromyalgia because the amount of pain an individual

experiences is subjective in nature. 326 F.3d 914, 919 (7th Cir. 2003). Unum concedes that

requiring "objective" evidence of a subjective factor like pain would be arbitrary and capricious.

But Unum argues that it was not basing its decision on a lack of evidence of pain. Its reviewers, in

fact, conceded that Plaintiff's fibromyalgia diagnosis was reasonable and that she had reported

significant pain symptoms. (R. at UA-CL-003533, 003297, 003740.) Unum was not implying that

Plaintiff's disability claim would have been successful had she provided objective evidence of pain

or evidence of a control point examination for fibromyalgia. Instead, what Unum found lacking was

evidence of the *impact* of Plaintiff's pain on her ability to work. That is, although Plaintiff herself

was the only conceivable source establishing the level and frequency of her pain, there are other,

5

objective, kinds of evidence that could establish how that pain limited her abilities, and Unum found

the record lacking in that department. Several courts, including the Seventh Circuit, have

recognized that an administrator is entitled to look for objective evidence of an individual's

functional limitations due to pain. "A distinction exists . . . between the amount of fatigue or pain

an individual experiences, which . . . is entirely subjective, and how much an individual's degree

of pain or fatigue limits his functional capabilities, which can be objectively measured." *Williams,*

509 F.3d at 322.

But here it is not at all clear that Unum was actually making the distinction between

evidence of subjectively experienced pain (which does not exist) and evidence of the pain's impact

on the patient's abilities (which could exist). Although it now argues that all it needed was

objective evidence of the Plaintiff's functional limitations – rather than "objective" evidence of the

pain itself – its arguments, and those of its consultants, end up being circular. One of the key

records supporting Plaintiff's claim is the opinion of her treating rheumatologist, Dr. Partain, who

concluded that Plaintiff was unable to work. On a fibromyalgia assessment form, Partain noted that

Plaintiff experienced pain at a level of 7-8 out of ten, and that her symptoms were severe enough

to frequently interfere with her attention and concentration in performing simple work tasks. (R.

at UA-CL-003242-3244.) She could walk less than one block without severe pain, sit or stand only

20-30 minutes, and she would likely need to be absent from work for more than four days a month.

Partain concluded: "Despite interventions by neurology, psychiatry, psychology, neuropsychology,

orthopedics, physiatry, integrative medicine, pain program with multiple interventions from these

services, this patient remains unable to work." (*Id.* at 3246.)

6

Despite the ostensible strength of Dr. Partain's medical opinion, Unum dances around it by suggesting that it is based solely on the flawed neuropsychological evaluation conducted by Dr. Neunaber and Plaintiff's own self-reported symptoms. In Unum's view, these sources "lack the requisite objectivity." (Dkt. # 27 at 24.) Even if we discount the neuropsychological evaluation for the reasons given by Unum's consultant, however, there is no indication that Dr. Partain's conclusions about Plaintiff's limitations "lack objectivity." If they do, then it is hard to envision Unum *ever* paying disability benefits based on disabling fibromyalgia because in every such case the limitations described by the physician will be based primarily on Plaintiff's own self-reported symptoms. When a physician asked to assess a patient's functioning fills out a form describing limitations due to fibromyalgia, which is a condition characterized by self-reported levels of pain, tender points, and fatigue, it follows that the doctor's conclusions will in some respect be based on the Plaintiff's own self-reported symptoms. That is the nature of fibromyalgia. For the insurer to later claim that it denied the claim not because fibromyalgia is a subjectively experienced disease but because there was no objective medical evidence of the claimant's limitations is essentially circular under these circumstances. Here we have the Plaintiff's treating rheumatologist, who indicates he saw Plaintiff every 2-3 months for two and one-half years, who filled out the questionnaire and indicated all of her limitations. Unum has not explained what more "objective" evidence Partain or the Plaintiff could have provided.

The contrast with *Williams*, *supra*, is telling. 509 F.3d at 322. There, the insurer denied benefits due to chronic fatigue syndrome (whose symptoms are also entirely subjective) in large part because the insured's physician failed to completely fill out a disability form.

On this questionnaire, Dr. Sorin did mark boxes reflecting that Williams's fatigue constantly interfered with his attention and concentration; that Williams could occasionally twist, stoop, crouch, and climb; and that Williams would have both "good days" and "bad days," leading him to miss more than four day of work each month. Other parts of the questionnaire however, were not fully completed. For example, Dr. Sorin marked that Williams was only capable of low stress jobs, but left blank the section asking for an explanation for this conclusion. In another section, Dr. Sorin wrote that Williams could walk one to two city blocks without rest, marked that Williams could only stand or walk less than two hours a day, and checked that Williams needed a job where he could shift positions at will. In this same section however, Dr. Sorin did not fill out how many hours or minutes Williams could sit or stand at one time, and instead wrote in the margin that this was "unknown." With respect to lifting, Dr. Sorin marked that Williams could occasionally lift less than ten pounds, but failed to fill out the form with respect to the higher weight amounts listed. Finally, Dr. Sorin marked that Williams had significant limitations doing repetitive reaching, handling, or fingering, but in the section where the form asked the percentage of time during a working day that the patient can perform these activities, Dr. Sorin wrote "untested" in the margin.

*Williams v. Aetna Life Ins. Co.,* 509 F.3d 317, 320 (7th Cir. 2007).

The insurer in *Williams* denied benefits on the ground that Dr. Sorin hadn't provided evidence that the plaintiff's chronic fatigue syndrome limited his functioning to the extent the plaintiff claimed. The Seventh Circuit affirmed the denial. It noted that although the insurer could not deny the claim merely on the basis that the alleged disability was subjectively experienced, "the Plan's denial of benefits to Williams on the basis of Dr. Sorin's failure to provide accurate information detailing how Williams's fatigue limited his functional abilities was not arbitrary and capricious." *Id.* at 323.

The unstated but obvious premise of cases like *Williams* is that a *properly* completed disability questionnaire will often constitute adequate "objective" evidence of a disease, like fibromyalgia, that is subjectively experienced. Such a questionnaire represents a physician's opinions, based on examination of the patient, about the patient's limitations. That such a

8

questionnaire may be based on self-reported pain symptoms is simply a truism: if the disease itself

is only subjectively experienced, then any medical assessment of the disease's limitations will

necessarily be based on the patient's subjective reports of pain. Although the Seventh Circuit and

other courts have made clear that an administrator is entitled to ask for "objective" evidence in

fibromyalgia cases, when the patient provides as much such evidence as can reasonably be expected,

the administrator cannot dismiss the evidence on the ground that it is based solely on self-reported

symptoms, because to reject the claim on that basis is tantamount to objecting to the nature of

fibromyalgia itself. *Holmstrom v. Metropolitan Life Ins. Co.,* 615 F.3d 758, 769 (7th Cir. 2010)

(reversing denial of benefits when patient provided functional capacity questionnaires filled out by

physician). Here, Unum's position that Plaintiff failed to provide evidence of functional limitations

is conclusory. Nowhere does it assert that Dr. Partain omitted key sections of the fibromyalgia form

(as in *Williams*), and in fact its only direct criticism of his conclusion is that it is based on the

neuropsychological exam and Plaintiff's self-reported symptoms. Yet, as noted above, *any*

fibromyalgia disability form will be based largely on a patient's self-reported symptoms. Thus,

although Unum now insists its denial was based on a lack of objective evidence of the Plaintiff's

limitations due to pain, its reasons for rejecting the evidence she did provide are based almost

entirely on the flawed objection that her evidence was dependent on her self-reported symptoms,

which, as noted above, is a truism.

Moreover, although Unum notes that there is no "treating source rule" in ERISA cases, it

is not as though its own rheumatologist provided a strong basis for rejecting Dr. Partain's opinions,

even under arbitrary and capricious review. Dr. Bress offered three reasons for discounting

Plaintiff's functional limitation claims. First, although Dr. Bress appeared to accept that Plaintiff

has fibromyalgia, he observed that "her symptoms were present for years before her date of

9

disability and she was able to work full time. There is no evidence of a flare of her symptoms at or around the date of disability to explain her cessation of work." (R. at UA-CL-003533.) The Seventh Circuit has already referred to this as a "bad" argument:

> The plan's bad argument is that because Hawkins worked between 1993 and 2000 despite his fibromyalgia and there is no indication that his condition worsened over this period, he cannot be disabled. This would be correct were there a logical incompatibility between working full time and being disabled from working full time, but there is not. A desperate person might force himself to work despite an illness that everyone agreed was totally disabling.

*Hawkins v. First Union Corporation Long-Term Disability Plan,* 326 F.3d 914, 918 (7th Cir. 2003).[1]

Dr. Bress then noted that most people with fibromyalgia are able to work, and there was nothing in the record to set Plaintiff's case apart from other fibromyalgia patients. If his previous conclusion was a "bad argument," then this one is "the weakest possible evidence" that Plaintiff was actually able to work: "The fact that the majority of individuals suffering from fibromyalgia can work is the weakest possible evidence that Hawkins can, especially since the size of the majority is not indicated; it could be 50.00001 percent." *Id.* at 919.

Finally, Dr. Bress suggested Weitzenkamp's failure to undergo physical therapy undermined her disability claim:

> one of the most important parts of treatment of patients with FM is a physical therapy program, with emphasis on reconditioning and with the goal in mind of returning the patient to normal vocational and avocational activities as soon [as] possible. There is nothing atypical or unusual about the insured's FM to preclude this. It is therefore my opinion that the claimed restrictions and limitations are not supported on the basis of symptoms associated with the insured's FM.

---

[1]The argument is also flawed because there is evidence in the record that Plaintiff's condition significantly worsened after a bout with a virus.

(R. at UA-CL-003533.)  Plaintiff argues, however, that she was awaiting spinal fusion surgery at

the time and would not have been a candidate for "reconditioning" or other physical therapy

programs.  Thus, the fact that she did not engage in physical therapy is not probative of her

underlying limitations due to pain.  Moreover, Dr. Bress did not address Dr. Partain's statement,

quoted above, to the effect that "despite interventions by neurology, psychiatry, psychology,

neuropsychology, orthopedics, physiatry, integrative medicine, pain program with multiple

interventions from these services, this patient remains unable to work." (*Id.* at 3246.)  In other

words, Dr. Partain was saying that Plaintiff remained unable to work despite having tried every

possible solution conceivable to Dr. Partain.

Unum argues that Dr. Bress's opinions were merely ancillary to its denial of benefits, but

in the record there is no other discussion by an M.D. of Plaintiff's limitations due to pain, *i.e.,* the

evidence supplied by Dr. Partain.  The bulk of Unum's briefing is devoted to the explanations given

by Ph.D. psychologists for discounting Plaintiff's cognitive limitations.  It is true that Plaintiff's

cognitive impairments play a role in some of her functional limitations (as Dr. Partain recognized),

and I could not conclude that Unum's reasons for discounting her cognitive impairments were

arbitrary or capricious.  But nowhere in the record is there a satisfactory discussion of why Dr.

Partain's conclusions do not satisfy Unum's desire for "objective" evidence of Plaintiff's

limitations.  Accordingly, to the extent Unum's denial was based on a finding of no disability, I

cannot uphold it even under arbitrary and capricious review.[2]

_____

[2]Unum's present argument focuses largely on the question of whether Plaintiff was disabled,
i.e., whether she provided adequate objective evidence of her disability. The denial letter, however,
suggested that the denial of benefits was actually due to the fact that her disability (if she *was*
disabled) was based on self-reported symptom, which meant the policy's 24-month limit would
apply.

**B. Plan Limitation for "Self-reported Symptoms"**

Unum also argues that even if Plaintiff's condition were actually disabling, its 24-month limitation for self-reported symptoms would apply. As described in the policy, disabilities "which are primarily based on self-reported symptoms . . . have a limited pay period up to 24 months." (R. at UA-CL-000420-21.) The policy defines self-reported symptoms as "manifestations of your condition which you tell your doctor that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine." (R. at UA-CL-000436.) "Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy." (*Id.*) Unum argues that Weitzenkamp's fatigue, depression, anxiety and fibromyalgia are all based on self-reported symptoms, and thus she was subject to the 24-month limit.

The diagnosis of fibromyalgia itself can be accomplished through "tests, procedures or clinical examinations standardly accepted in the practice of medicine." That is, a physician may conduct a trigger point test or use other clinical examinations to conclude that a patient has fibromyalgia. *See, e.g., Chronister v. Baptist Health & UNUM Life Ins. Co.,* 442 F.3d 648, 656 (8th Cir. 2006) ("The eighteen point 'trigger test' performed by Dr. Lipsmeyer qualifies as a 'clinical examination standardly accepted in the practice of medicine."); *Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 919 (7th Cir. 2003) (noting that fibromyalgia "itself can be diagnosed more or less objectively by the 18 point test . . . but the amount of pain and fatigue that a particular case of it produces cannot be.")

But even if the disease itself can be diagnosed "objectively" (that is, through standardly accepted clinical practices) it does not necessarily follow that the self-reported symptoms limitation

would not apply. Although the *disease* may be diagnosed objectively, the definition of self-reported symptoms does not cover the disease *per se* but the "*manifestations* of your condition which you tell your doctor." (R. at UA-CL-000436.) If these "manifestations" are not verifiable using tests, procedures or clinical examinations, then they constitute "self-reported symptoms." (*Id.*) Thus, a doctor may diagnose a patient with migraine headaches, and he may do so after following standardly accepted clinical practices. But the patient would still be limited to 24 months of benefits because his manifestations of the disease – headaches – are not verifiable. Ultimately, the doctor's diagnosis relies on *believing* the patient. Here, the relevant manifestations of fibromyalgia are limited to pain and possibly fatigue. All parties have conceded that such manifestations are *not* verifiable using tests. In other words, although a physician can diagnose fibromyalgia based on a trigger test, for example, there is no test or procedure that would verify that the patient's responses to that test (reports, or "manifestations" of pain or tenderness) are accurate. In addition, the definition uses the phrase "manifestations . . . which you tell your doctor." The policy's intent is simply to curtail benefit payments for those things one tells one's doctor that are not verifiable.

Put another way, the eighteen-point fibromyalgia exam is premised on the veracity of the patient's responses to the test. The test itself may be conducted under regularly accepted medical procedures, but that does not erase the fact that the manifestations of the condition are self-reported and unverifiable by any test. As noted above, a patient may visit his doctor and report the standard symptoms of migraine headaches, and the physician will make his diagnosis using medically accepted practices. Even so, the fact that the physician used medically accepted practices in his diagnosis does not mean that the manifestations the patient told him about were themselves verifiable. The patient could have been exaggerating or outright lying. Focusing merely on how

13

the doctor made his diagnosis would mean a patient could circumvent the 24-month limitation for

headaches merely by having a doctor diagnose his headaches using standardly accepted medical

practices. Surely that would be an unprincipled result, and the same holds true here. The point is

that it does not matter what the diagnosis is, or how it was reached, so long as it is based on

manifestations, like pain, that are unverifiable and that the patient reports to the doctor.[3]

After all, the obvious intent of such a limitation is to curtail the possible abuse and

malingering that could occur for claims based on conditions that are, at their core, based on

credibility rather than verifiable tests or procedures. (Notably, there is no suggestion of that here.)

An additional intent is presumably to avoid the huge administrative cost of distinguishing those

claims based on self-reported symptoms that are valid from those that are not. Given this intent,

what purpose would be served by limiting benefits for those who report disabling pain and fatigue

but *not* limiting benefits for similar patients whose pain and fatigue are caused by fibromyalgia?

If someone will exaggerate an illness to his insurance company, he will not hesitate to exaggerate

his symptoms to his physician. Putting a label on a disease does not change the fact that the disease

can be based primarily on self-reported symptoms.

Insurance policies and benefit plans are contracts, and insurers and employers are not

obligated to cover every disability indefinitely (or at all). If the policy or plan can limit payments

based on pain and fatigue, then certainly it can limit payments based on pain and fatigue caused by

_____

[3]For these reasons, I disagree with the Eighth Circuit's conclusion in *Chronister v. Baptist
Health,* 442 F.3d 648, 656 (8th Cir. 2006). In a brief discussion, that Court observed that the trigger
point test for fibromyalgia was a clinically accepted practice, and thus the plaintiff's fibromyalgia
could not be limited by the 24-month clause. As noted herein, however, even if fibromyalgia is
diagnosed through clinically accepted practices, the diagnosis is nevertheless based on
"manifestations . . . which you tell your doctor."

14

fibromyalgia. Although making such a limitation explicit would have been clearer, it is not as though the definition of self-reported symptoms is shrouded in mystery. It limits benefits based on claims of pain, fatigue, soreness, etc., and that is all we have here. At least Unum's determination to that effect is not arbitrary or capricious.

Weitzenkamp raises an argument in her response / reply brief that she had not raised earlier. Specifically, she asserts that the two-year limit on benefits based on self-reported symptoms was not contained in the summary plan description ("SPD") and in the letter initially approving her claim for long-term disability benefits. Even if this argument were not waived, however, it would not be persuasive. If a limitation or exclusion is absent in the SPD, that does not mean that it cannot be applied. Such a rule would not make sense, of course, as the SPD is a *summary* description of the plan's terms. By its very nature, it cannot include all the provisos and exclusions that a typical insurance policy contains. *Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 711 (7th Cir. 1999) ("When . . . the plan and the summary plan description conflict, the former governs, being more complete-the original, as it were, which the summary plan description excerpts and translates into language that may be imprecise because it is designed to be intelligible to lay persons."). If a beneficiary can show he "reasonably relied on the summary plan description to his detriment," the conflict could be resolved otherwise, but here there is no argument to that effect, nor is any imaginable. *Id.*

### C. Social Security Disability

Weitzenkamp also argues that Unum should have given more consideration to the fact that her application for Social Security Disability benefits was granted. She asserts that it was unfair for Unum to have encouraged her SSDI application (which, if successful, would reduce Unum's

payout) and then turn around and conclude that she was not disabled. But here Unum noted that the Social Security determination was based on her mental condition (affective disorders), and Unum did not refute that determination. (R. at UA-CL-003742.) Instead, Unum relied upon its policy's 24-month limit for mental illness. Thus, this is not a case where the plan came to a different conclusion on the merits than the Commissioner of Social Security. Instead, it is a case where the plan's policy limits produced a different outcome. Here, I have concluded that even if Plaintiff were disabled due to her mental condition or her pain, the Unum policy would not provide any more benefits because the 24-month period for self-reported symptoms had already expired. The determination of the Commissioner of Social Security did not involve such considerations.

### D. Unum's Counterclaim for Overpayment

Unum's policy provides that if it "overpays" a claim, it has the right to recover from the policyholder. Unum argues that Plaintiff received $9,089 in Social Security Disability benefits, and the policy considers such payments to be "deductible," that is, refundable to Unum. (R. at UA-CL-000406, 000417.) Plaintiff has not responded to this argument. In *Gutta v. Standard Select Trust Ins. Plans,* 530 F.3d 614, 621 (7th Cir. 2007), the Seventh Circuit concluded that counterclaims seeking reimbursement for overpayments were equitable in nature and thus viable claims in an ERISA action. Accordingly, I conclude that Unum is entitled to summary judgment on its counterclaim.


## III. Conclusion

It would perhaps be clearer if, in addition to its generic description of the types of conditions that were subject to the 24-month limitation, Unum also, by way of example, listed the specific

names of some of the conditions to which the limitation applied. Explicitly stating that benefits for claims based on conditions such as fibromyalgia, Chronic Fatigue Syndrome, etc., are limited to 24 months would likely avoid litigation in many cases. Even without such language, however, the policy is sufficiently clear; at least Unum's interpretation and application of it is not arbitrary and capricious. The policy expressly limits payments based on self-reported symptoms such as pain and fatigue to 24 months. It is undeniable that Weitzenkamp's disability is based on such symptoms. The fact that her symptoms are due to fibromyalgia, which is diagnosable through standard medical practices, does not change the fact that her disability is "primarily based on self-reported symptoms" of pain. Accordingly, the policy's limit for self-reported symptoms applies. Unum's motion for summary judgment is **GRANTED** and Plaintiff's motion is **DENIED**. Unum is entitled to $9,089 as a result of its overpayment to Plaintiff. The Clerk is directed to enter judgment forthwith.

      **SO ORDERED** this ___18th___ day of November, 2010.

                               s/ William C. Griesbach
                               William C. Griesbach
                               United States District Judge