UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SUSIE WEITZENKAMP,

        Plaintiff,

v.                                                             Case No. 09-C-1017

UNUM LIFE INSURANCE COMPANY,

        Defendant.

**ORDER DENYING FEES**

In this ERISA action, Plaintiff has moved for attorney's fees following the Seventh Circuit's reversal of this Court's judgment in favor of the Defendant. Plaintiff qualifies as a party who has obtained some degree of success in this litigation and is eligible for consideration of the grant of a fee award, and such parties enjoy a small presumption that a fee award would be appropriate. Once a court determines that a party has obtained some modicum of success, the analysis becomes somewhat more complex, or at least less clear-cut. The Seventh Circuit has recently summarized the analysis as follows:

> This circuit has recognized two tests for analyzing whether attorney fees should be awarded to a party in an ERISA case. "The first test looks at the following five factors: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions.""The second test looks to whether or not the losing party's position was 'substantially justified.' . "In any event, both tests essentially ask the same question: 'was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?' "A

> five-factor test may inform the court's analysis, but 'the factors in the test are used to structure or implement, rather than to contradict, the "substantially justified" standard ... as the "bottom-line" question to be answered.'" "In determining whether the losing party's position was 'substantially justified,' the Supreme Court has stated that a party's position is 'justified to a degree that could satisfy a reasonable person.'"

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.,* 657 F.3d 496, 505-506 (7th Cir. 2011) (citations omitted).

Distilled to their essence, these numerous factors are directed at answering the question of whether the losing party's position was justified to a degree that could satisfy a reasonable person. If that question were taken at face-value, then it would seem I would be hard-pressed to conclude that a reasonable person could not be satisfied by Unum's position—after all, this Court was *itself* satisfied by Unum's position. Having ruled in Unum's favor, the only way I could conclude that its position lacked substantial justification would be if I concluded that my own analysis was not just erroneous, but *unreasonable*. Luckily I need not partake in such an awkward analysis, as the Supreme Court has recognized in a similar context that "[t]he fact that one other court agreed or disagreed with [a party] does not establish whether its position was substantially justified." *Pierce v. Underwood,* 487 U.S. 552, 569 (1988). Thus, although it is certainly a factor to be considered, it is clear that a district court's agreement with one party's position will not *ipso facto* grant that party an irrevocable imprimatur of substantial justification.

This reflects the fact that there are many reasons a district court can be reversed. On a novel question of law, for example, different jurists can simply have different views of the proper outcome. That is what occurred here. However, it is also possible for a district court to simply miss or ignore a controlling precedent, misapply a statute or to otherwise make a clear error. In this latter

2

circumstance, it is much more likely that a victor at the district court level will be found to lack substantial justification. In my view, when a district court is later reversed due to a *bona fide* disagreement about a novel question of law, rather than due to the kind of clear error described above, the party who lost on appeal is likely to have been substantially justified. At the very least, that is my conclusion here.

Unum also points out that other courts in other jurisdictions have adopted arguments similar to its own, and that even the court of appeals, in reversing, noted that the plain language of the plan supported Unum's position in this case. The fact is that Unum's position was based on its plan language, which had not been construed or applied in this circuit. And Unum no doubt knew that the cards were stacked in its favor because its plan granted it discretion to interpret its terms. This meant that a reviewing court would have to conclude its position was arbitrary or capricious for it to lose. Given the novelty of the legal question and the deference Unum would be afforded in answering that question, its position was in fact quite reasonable. These factors all counsel against an award of fees.

In addition, reference to the specific factors cited above suggests that a fee award would be unwarranted. The five-factor test, for example, uses terms like "offending party" and asks whether that party was "culpable" or acting in bad faith. Because Unum lost on appeal based on a *bona fide* disagreement about a novel question of law, I am unable to conclude that Unum is properly described as an "offending party" merely because it lost on appellate review. Tellingly, there is certainly no suggestion at this level or the appellate level that Unum was acting in bad faith or should be considered an "offending" party at all. Such terminology is normally part of the lexicon of analyses as to whether a motion or case is frivolous or whether sanctions are warranted, and we

3

are nowhere near that point in this action. Here, Unum's benefits determination was based on a reasonable, if erroneous, interpretation of its plan language and consultation with numerous medical professionals.

Another of the five factors asks whether a party was "out to harass" its opponent, and again such behavior is wholly absent here. *Cf. Lowe v. McGraw-Hill Companies, Inc.,* 361 F.3d 335, 339 (7th Cir. 2004) ("The only basis the plan had for refusing to pay survivor's benefits was that Lowe's signature might have been notarized on a sheet of paper that has vanished. This 'the dog ate my homework' defense was no defense at all, and so the plan's position cannot be said to have been substantially justified and Lowe was rightly reimbursed for his attorney's fees.") (citation omitted). As noted earlier, the deference Unum would be granted by virtue of its plan terms allowed it to reasonably press its interpretation of the plan language. Such deference means that a plan administrator's interpretation will often be upheld in federal court *even if the judge thinks it is wrong*. With that context, it is hard to fault Unum for proceeding as it did, and there is certainly no inkling of harassment here.

The third factor in the five-factor test asks whether a fee award would "deter" similar conduct in the future. As already noted, however, this is not a case where deterrence plays any role at all. Unum lost not because of its "conduct" or other behavior, but simply because an appellate court took a different view of its plan language. This is a garden variety legal dispute over the meaning of a particular contract, and thus the notion of "deterrence" has no role at all because one court's award of fees for a loss on a discrete legal issue would have little impact on the future conduct of any other non-parties.

4

The fourth factor involves an analysis of whether the plan beneficiaries, as a whole, have benefitted from the victor's position. Here, it appears that a very small number of plan beneficiaries would benefit—those with primarily self-reported symptoms—and it is likely that such a benefit would come largely or at least significantly at the expense of the other members, either through cost increases or otherwise. The obvious purpose of narrowing the plan language as Unum did was to eliminate or reduce coverage for diseases or other disorders that are less verifiable than, say, a broken leg or arthritis. Given that coverage will now be offered on a broader, less verifiable, basis, it is difficult to conclude that the plan beneficiaries will enjoy any general benefit at all.

In sum, I conclude that although Unum lost at the court of appeals, its position was substantially justified because it was reasonable and not designed to harass its opponent or impede justice in any way. The merits of the parties' positions were close, particularly in light of the deference that is to be accorded the insurer when it has discretion to construe its own plan terms. The Seventh Circuit has counseled that prevailing parties in ERISA actions are *not* to be awarded fees as a matter of course. *Lowe,* 361 F.3d at 369. Thus, when an insurer wins at the district court level and its judgment is reversed based on a *bona fide* disagreement about a novel question of law, the victor will be hard-pressed to argue that the loser's position was not substantially justified. Any other result would make attorney's fees the "norm" in ERISA cases rather than the exception.

For these reasons, the motion for fees is **DENIED**.

**SO ORDERED** this   31st   day of January, 2012.

    s/ William C. Griesbach
    William C. Griesbach
    United States District Judge

5

Case 1:09-cv-01017-WCG   Filed 01/31/12   Page 5 of 5   Document 73